# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TAMMY T.[1],                                           Case No. 1:22-cv-248
      Plaintiff,                                  Litkovitz, M.J.

vs.

COMMISSIONER OF                                  **ORDER**
SOCIAL SECURITY,
      Defendant.

Plaintiff Tammy T. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security ("Commissioner") denying her

application for disability insurance benefits ("DIB").  This matter is before the Court on

plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition (Doc. 14),

and plaintiff's reply memorandum (Doc. 15).

## I.  Procedural Background

Plaintiff protectively filed an application for DIB on July 13, 2016, alleging disability

beginning July 22, 2015, due to post-traumatic stress disorder ("PTSD"), major depressive

disorder, anxiety, neuropathy, cervicalgia, degenerative disc disease of the cervical region,

chronic pain syndrome, herniated disc in the neck and back, lumbar radiculopathy, and adhesive

capsulitis of the right shoulder.  (Tr. 314-17, 350).[2]  Plaintiff, through counsel, appeared at a

telephone hearing before administrative law judge ("ALJ") Christopher Tindale on January 25,

---

[1] Pursuant to General Order 22-01 due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] Plaintiff previously filed for DIB alleging disability beginning on April 17, 2013.  ALJ Kathleen H. Eiler issued an unfavorable decision on July 21, 2015.  (Tr. 80-99).

2019. (Tr. 61-79). On April 22, 2019, the ALJ issued a decision denying plaintiff's DIB application. (Tr. 122-47). The Appeals Council granted plaintiff's request for review and remanded the matter for further proceedings. (Tr. 148-53.)

On remand, the claim was assigned to ALJ Tindale. After a telephone hearing held on November 16, 2020 (Tr. 37-60), the ALJ issued a decision denying plaintiff's DIB application. (Tr. 7-36). This decision became the final decision of the Commissioner when the Appeals Council denied review on April 12, 2022. (Tr. 1-6.)

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

2

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act on March 31, 2019.

2. The [plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of July 22, 2015 through her date last insured of March 31, 2019 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairments: disorders of the lumbar spine; degenerative joint disease of the left shoulder and left knee; obesity; mild asthma; post-traumatic stress disorder (PTSD); mood disorder; and anxiety disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can stand and/or walk four hours per day and sit for about six hours per day.  She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, and crouch, but never crawl.  She can occasionally reach overhead.  She must avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, and pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.  She must avoid all exposure to dangerous hazards such as unprotected heights.  The [plaintiff] can perform simple, routine, repetitive tasks with no production rate paced work.  She can occasionally interact with supervisors, coworkers, and the general public.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[3]

7. The [plaintiff] was born [in] . . . 1969 and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education (20 CFR 404.1564).

---

[3] Plaintiff's past relevant work was as a nurse assistant, a semi-skilled, medium exertion position, and a server, an unskilled, medium exertion position performed at the light level of exertion.  (Tr. 26, 55-56).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).[4]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from July 22, 2015, the alleged onset date, through March 31, 2019, the date last insured (20 CFR 404.1520(g)).

(Tr. 13-28).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __

---

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as paper sorter and counter (85,000 jobs nationally), small products assembler (175,000 jobs nationally), and office helper (140,000 jobs nationally) and representative sedentary, unskilled occupations such as document preparer (80,000 jobs nationally), surveillance system monitor (20,000 jobs nationally), and dowel inspector (11,000 jobs nationally).  (Tr. 27, 57-58).

U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197,

229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

　　　The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.  Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

## D.  Specific Errors[5]

　　　In her Statement of Errors, plaintiff contends the ALJ erred by using the wrong legal

standard in assessing plaintiff's mental RFC, thereby creating an unwarranted additional

procedural burden for plaintiff to overcome.  (Doc. 12 at PAGEID 3936-38).  Plaintiff further

contends the ALJ erred by adopting the previous ALJ's mental residual functional capacity

("RFC").  (*Id.*).[6]  In her second assignment of error, plaintiff argues the ALJ's physical RFC is

---

[5] The parties generally agree with the ALJ's summary of plaintiff's medical history.  (*See* Doc. 12 at PAGEID 3933; Doc. 14 at PAGEID 3947).  Specific medical records will be discussed as relevant to the analysis.

[6] As best the Court can discern, plaintiff does not contend that the ALJ violated *Early*'s fresh look requirement in crafting plaintiff's physical RFC.  (*See* Doc. 12 at PAGEID 3936-38).  Plaintiff does not discuss the physical RFC finding in her first assignment of error, and the Court notes that ALJ Tindale's physical RFC was more restrictive than ALJ Eiler's 2015 RFC.  (*See* Tr. 88, 16-17).

not supported by substantial evidence, and the ALJ disregarded the effect of plaintiff's obesity on her ability to work.  (*Id.* at 3939-40).

The Commissioner counters that the ALJ appropriately accounted for a prior decision by giving the evidence in the current claim the "fresh look" required.  (Doc. 14).  The Commissioner also argues the ALJ's physical RFC is supported by substantial evidence, and the ALJ properly considered plaintiff's obesity.

### 1. The ALJ Satisfied the Requirements of *Earley*.

If a social security claimant has filed a prior application, res judicata may apply to the administrative proceedings.  *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)).  *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such a hearing.").  The Sixth Circuit held in *Drummond* that "absent changed circumstances" the findings made by an ALJ as part of a prior disability determination are binding on a subsequent ALJ in later proceedings. 126 F.3d at 842.  Following the decision in *Drummond*, the Commissioner issued Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902 (June 1, 1998).  AR 98-4(6) explains:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

*Id*. at *3.

In June 2018, the Sixth Circuit clarified its decision in *Drummond* and the way the decision seeks to protect principles of "consistency between proceedings and finality with respect to resolved applications." *Earley*, 893 F.3d at 931. The Sixth Circuit explained that when a claimant who has filed a prior application files "a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application." *Earley*, 893 F.3d at 933. But the Court of Appeals also explained that "an individual may file a second application - for a new period of time - for all manner of reasons," and res judicata would not apply to the second application. *Id*. When a claimant seeks disability benefits for a distinct time period, he can "obtain independent review" of the application so long as he "presents evidence of a change in condition or satisfies a new regulatory threshold." *Id*. at 932. Principles of consistency and finality "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability," while bearing in mind the record and findings in the prior proceedings. *Id*. at 931.

In this case, ALJ Tindale stated:

[T]here is a prior decision from Administrative Law Judge Kathleen Eiler on July 21, 2015 (B1A). Findings of fact from a prior decision, including a determination of an individual's residual functional capacity and vocational findings, are generally controlling in subsequent, unadjudicated periods unless there is new and material evidence or a showing of "changed circumstances." *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), *acq.*, SSA AR 98-4(6) and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th

> Cir. 1990), *acq*., SSA AR 98-3(6).  In this case, there is new and material evidence that merits changes to the findings of fact identified in the prior decision.

(Tr. 11).

Plaintiff contends that instead of giving the evidence a "fresh look" as *Earley* requires, ALJ Tindale reviewed the "newly submitted evidence . . . against the backdrop of ALJ Eiler's 2015 findings, framing his review of the evidence as a question of whether it supported a departure from ALJ Eiler's RFC."  (Doc. 12 at PAGEID 3936).  Plaintiff contends the ALJ erred by using the "previous ALJ's RFC as a mandatory starting point and start[ing] his analysis of the evidence by applying the wrong legal standard, thus tainting his entire decision and creating an unwarranted additional burden for [plaintiff] to overcome."  (*Id*. at PAGEID 3937).  Plaintiff further argues the ALJ erred by "explicitly" adopting the prior ALJ's mental RFC. (*Id*.; *see also Id*. at PAGEID 3938).

Post-*Earley*, social security claimants have alleged error where ALJs cite *Drummond* in their decisions without similarly discussing *Earley*.  As courts addressing this issue have explained, "while citation to *Drummond* without *Earley* raises a yellow flag, the ultimate question here is whether the ALJ gave a fresh review to the evidence."  *Mark D. v. Comm'r of Soc. Sec.*, No. 3:22-cv-58, 2023 WL 312795, at *5 (S.D. Ohio Jan. 19, 2023); *Lambert v. Comm'r of Soc. Sec.*, No. 1:18-cv-116, 2019 WL 336903, at *5 (S.D. Ohio Jan. 28, 2019), *report and recommendation adopted*, 2019 WL 1125759 (S.D. Ohio Mar. 12, 2019) (*Earley* is satisfied if ALJ gave new evidence a "fresh look" despite purporting to follow *Drummond*).  *Cf.*

*Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio March 8, 2023) (use of prior RFC determination "as a mandatory starting place for his own RFC determination" violates *Earley*) and *Ferrell v. Berryhill*, No. 1:16-cv-00050, 2019 WL 2077501, at *4 (E.D. Tenn. May 10, 2019).

"When an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Earley*, 893 F.3d at 933. As the Sixth Circuit elaborated:

> That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.
>
> At the same time, an applicant remains free to bring a second application that introduces no new evidence or very little new evidence after a failed application. But she should not have high expectations about success if the second filing mimics the first one and the individual has not reached any new age (or other) threshold to obtain benefits. What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals.

*Id.* at 933-934. In rejecting the suggestion that "the administrative law judge should completely ignore earlier findings and applications," the Court of Appeals determined that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

Plaintiff argues the ALJ failed to give a fresh look to the evidence as required by *Early* because the ALJ "explicitly" adopted the prior ALJ's mental RFC. (Doc. 12 at PAGEID 3936).[7] The Court disagrees.

---

[7] ALJ Tindale's physical RFC was more restrictive than ALJ Eiler's 2015 RFC. (*See* Tr. 88, 16-17).

In this case, ALJ Tindale gave the medical evidence of record the fresh review to which plaintiff was entitled. The ALJ considered the evidence post-dating plaintiff's alleged onset date in crafting plaintiff's mental RFC. The ALJ discussed treatment notes from August 2015 through January 2019 (Tr. 21-23) and noted repeated references to plaintiff's normal mood and affect during this period. (Tr. 23, citing Tr. 3155, 3162, 3164, 3167, 3170, 3173, 3179, 3183, 3187, 3190, 3192, 3196, 3199, 3201, 3204, 3208, 3211, 3213, 3216, 3324, 3328, 3385, 3388).[8] The ALJ elaborated that psychiatric visits throughout 2018 and 2019 showed plaintiff had a "cooperative attitude, average intelligence, euthymic mood, full affect, logical thought process, and good remote and recent memory[.]" (Tr. 26, citing Tr. 3563, 3568, 3573, 3578, 3744-45, 3749-50, 3754-55, 3759-60). The ALJ also referenced March 2017 and January 2019 treatment records which showed plaintiff was tolerating her medication well, and that plaintiff had reported stable symptoms and ongoing compliance with her medication and therapy. (*Id.*, citing Tr. 1078, 3577). The ALJ also cited repeated references to plaintiff's normal mood and affect. (*Id.*, citing Tr. 3155, 3162, 3164, 3167, 3170, 3173, 3179, 3183, 3187, 3190, 3192, 3196, 3199, 3201, 3204, 3208, 3211, 3213, 3216, 3324, 3328, 3385, 3388). Based on the medical evidence of record post-dating plaintiff's alleged onset disability date, the ALJ limited plaintiff to "simple, routine, repetitive tasks in an environment of no fast production rate paced work" and only "occasional interaction" with supervisors, coworkers, and the general public. (Tr. 23; *see*

---

[8] The Court notes the ALJ cited Tr. 3400 as evidence of references to plaintiff's normal mood and affect. (Tr. 23, citing Tr. 3400). Tr. 3400, however, does not reference such an examination or finding. Instead, Tr. 3400 discusses the physical examination of plaintiff's wrist, knee, and hip. (Tr. 3400).

*also* Tr. 17). The ALJ determined that "the prior ALJ decision's mental residual functional capacity limitations are adopted as they are consistent with the record and the subsequent evidence is not materially different." (Tr. 24). The ALJ reasoned that "[o]verall, the longitudinal record does not show significant worsening from the prior decision (B1A). As such, the mental limitations in the residual functional capacity are the same as in the prior decision." (*Id.*).

While plaintiff argues the ALJ erred by adopting ALJ Eiler's 2015 mental RFC (Doc. 12 at PAGEID 3936-38), plaintiff has not shown that the ALJ erred by failing to fully account for her alleged impairments and resulting limitations in the mental RFC finding. Plaintiff has identified no evidence in the record requiring the inclusion of greater limitations than those found by ALJ Tindale to account for plaintiff's severe impairments of PTSD, mood disorder, and anxiety disorder. Because ALJ Tindale based his conclusion on the medical evidence of record obtained after ALJ Eiler's 2015 decision, ALJ Tindale provided the fresh look to which plaintiff was entitled. The ALJ thoroughly reviewed all the evidence and concluded that the new evidence did not establish greater mental limitations than those found in the 2015 RFC. ALJ Tindale's consideration of and reference to ALJ Eiler's previous mental RFC does not violate *Early*. 893 F.3d at 934. Accordingly, the ALJ applied the correct legal standard, and plaintiff's first assignment of error is overruled.

**2.  The ALJ's physical RFC is supported by substantial evidence.**

In her second assignment of error, plaintiff alleges the ALJ's physical RFC is not supported by substantial evidence for three reasons.  First, plaintiff argues the evidence establishes that plaintiff cannot sustain light exertion work.  (Doc. 12 at PAGEID 3939). Plaintiff cites treatment records from Dr. Nisheeth Pandey, her pain management specialist, which plaintiff argues "show significant impairment <u>prior</u> to the date last insured."  (*Id*., citing Tr. 3602-29) (emphasis in original).  Second, plaintiff argues the ALJ "failed to properly consider [plaintiff's] extreme morbid obesity" in determining plaintiff's RFC.  (*Id*. at PAGEID 3940).  Third, plaintiff contends the ALJ "inexplicitly removed" a restriction in the RFC: "limited to smooth level surfaces, so, no slippery surfaces, no erratically moving surfaces, and no uneven terrain," with no accompanying "explanation or logical bridge for removing it."  (*Id*. at PAGEID 3941, citing Tr. 16-17).

The Commissioner argues that the ALJ's physical RFC is supported by substantial evidence.  (Doc. 14 at PAGEID 3953-56).  The Commissioner contends "the ALJ conducted a thorough review of the record, considering the progress notes, treatment records, examination findings, and medical opinions, and reasonably determined that Plaintiff could perform a range of light work."  (*Id*. at PAGEID 3953, citing Tr. 17-26).  The Commissioner argues the ALJ properly evaluated plaintiff's severe impairment of obesity and included limitations in the RFC to account for her obesity.  (*Id*. at PAGEID 3955).  The Commissioner states that "the record is devoid of any specific functional limitations Plaintiff may have had due to her obesity that were

13

not accounted for in the ALJ's residual functional capacity assessment." (*Id*. at PAGEID 3956, citing *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005)).  The Commissioner argues plaintiff fails to "specify how her obesity impairs her ability to work," and "[u]nder such circumstances, the Court should reject Plaintiff's argument." (*Id*.).  The Commissioner also contends the ALJ did not err by omitting a limitation to smooth level surfaces as the ALJ essentially adopted the state agency opinion, which did not include this limitation. (*Id*. at PAGEID 3954).

The RFC assessment is an evaluation of the most a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC.  *See* 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record"); 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity"); *see also Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006); *Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the evidence in the record.") (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)).

Here, the ALJ's RFC limited plaintiff, in pertinent part, as follows:

 [T]he [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [plaintiff] can stand and/or walk four hours per day and sit for about six hours per day.  She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, and crouch, but never crawl.  She can occasionally reach overhead.

> She must avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, and pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.  She must avoid all exposure to dangerous hazards such as unprotected heights. . . .

(Tr. 16-17).

Plaintiff first argues the ALJ's RFC is not supported by substantial evidence because plaintiff cannot perform the lifting, standing, and walking requirements for light work.  The regulation defining light work states:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .

20 C.F.R. § 404.1567(b).  The ALJ, however, did not find plaintiff had the RFC for a full range of light work.  Rather, he limited plaintiff to no more than four hours of standing and/or walking per work day.  Plaintiff's argument is not well-taken.

Plaintiff also asserts that "[t]he ALJ primarily reasoned that [plaintiff's] total knee arthroplasty and walker use did not occur until after the date last insured in this case of March 31, 2019. *See*, *e.g.*, Tr. 20."  (Doc. 12 at PAGEID 3939).  Plaintiff argues that she had "significant impairment <u>prior</u> to the date last insured," suggesting that her walking impairment before the date last insured would preclude the range of light work the ALJ found.  (*Id*.) (emphasis in original).

15

Plaintiff cites two treatment records from Dr. Pandey in support of this argument.  (*Id.*, citing Tr. 3602-3629).  These 27 pages comprise two treatment notes written by Dr. Pandey from January 8, 2019 and February 5, 2019 (Tr. 3602-07, 3614-16, 3626-29), notes, imaging, and assessments associated with a February 12, 2019 left cervical medial branch block at C3-C6 with fluoroscopic guidance (Tr. 3608-13, 3617-22), and notes, imaging, and assessments associated with a February 19, 2019 right cervical medial branch block at C3-C6 with fluoroscopic guidance (Tr. 3623-27).  Tr. 3602 is a January 8, 2019 treatment note from Dr. Pandey reflecting plaintiff's reports of chronic back and knee pain.  (Tr. 3602).  On physical examination, Dr. Pandey reported that plaintiff had an intact gait and was able to heel and toe walk; she had limited range of motion in the lower spine and full range of motion in the ankles, knees, and hips; she was diffusely tender over the lumbar paraspinals; she had a positive straight leg raise test, positive seated root slump test, positive Kemp test, positive McMurray's test, and a positive Faber test; and she had 5/5 motor strength in the bilateral lower extremities.  (Tr. 3602-03).  Dr. Pandey stated that plaintiff's pain was "causing significant functional limitation resulting in diminished quality of life and impaired age appropriate" activities of daily living.  (*Id.* at PAGEID 3603).  Tr. 3628-29 is a February 5, 2019 treatment note from Dr. Pandey.  There, plaintiff complained of chronic pain in her neck and knee.  (Tr. 3629).  Plaintiff reported the severity level of her symptoms as "3-4/10 Mild."  (*Id.*).  Plaintiff further reported that her pain is worsened with strenuous activity, standing, walking, washing dishes, and cleaning.  (*Id.*).  Plaintiff stated she had not engaged in physical therapy in the last three to six months, and she

denied numbness, tingling, and weakness. (*Id*.). The physical examination on this date was identical to plaintiff's January 8, 2019 examination. (*See* Tr. 3605-06, 3629-30).

> The ALJ considered these and Dr. Pandey's subsequent treatment records:

> Dr. Pandey administered cervical medial branch blocks in March 2019, which provided 80% improvement for the claimant's neck pain ([B29F] *at* 12, 26, 37-38). The claimant continued to treat with Dr. Pandey after the date last insured of March 31, 2019. Dr. Pandey documented identical physical exam findings throughout 2019 and 2020 (*Id. at* 37-38, 54-55, 67-68, 70-71, 73-74, 86- 87, 90-91, 118-119, 139-140). Dr. Pandey tried a variety of other treatment techniques, including cervical facet radiofrequency denervation, left knee injections, and right shoulder injections (*Id. at* 46, 60, 81, 94, 101, 112, 122, 130). These procedures provided varying levels of pain relief (*Id. at* 54, 67, 87, 118, 139).

(Tr. 20). The ALJ also acknowledged that at an August 2020 orthopedic examination, after plaintiff's insured status lapsed, plaintiff exhibited swelling and tenderness of her left knee, and x-rays showed severe tricompartmental arthritis of the left knee. (Tr. 20, citing Tr. 3844). On October 9, 2020, plaintiff underwent a total left knee replacement and was using a walker to ambulate. (*Id*., citing Tr. 47-48, 3833). The ALJ noted, however, "that the surgery occurred over a year after the date last insured of March 31, 2019." (*Id*.). The ALJ concluded:

> The objective evidence, when taken as a whole, indicates the claimant can stand and/or walk up to four hours in an eight-hour workday despite her history of osteoarthritis affecting her neck, low back, shoulders, and knees. For instance, she often displayed a normal gait on exam from the alleged onset date of July 22, 2015 through the date last insured of March 31, 2019 (*See, for example* B21F/134; B24F/17, 28; B25F/7, 11, 15, 19, 24, 28, 32; 29F/2, 5).

(*Id*.).

17

The standing and walking limitations of the ALJ's RFC finding is substantially supported by the record. Dr. Pandey did not conclude that plaintiff's impairments limited her in any way such that she could not perform light exertional work consistent with the ALJ's RFC. There is no evidence in the record that Dr. Pandey issued any opinions about plaintiff's functional limitations resulting from her impairments. Rather, state agency consultant Dr. Myung Ho Hahn opined that plaintiff could perform light exertional work except she was further limited to four hours of standing and/or walking in an eight-hour workday. (Tr. 114-16). The ALJ discussed the other evidence of record introduced after Dr. Hahn's assessment, and the ALJ gave Dr. Hahn's opinions "significant weight." (Tr. 24). Plaintiff included no error relating to the ALJ's weighing of the state agency consultant's opinions.

Significantly, the ALJ considered the records cited by plaintiff when determining plaintiff's RFC. (Tr. 20, discussing Dr. Pandey's treatment records). By relying on Dr. Pandey's January and February 2019 records – the same records the ALJ reviewed – plaintiff essentially asks this Court to re-weigh Dr. Pandey's treatment notes and findings. That is the province of the ALJ. *Molly M. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-274, 2022 WL 336412, at *5 (S.D. Ohio Feb. 4, 2022) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011)) (in turn citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). The ALJ properly considered Dr. Pandey's notes, along with the other record evidence, and reasonably determined that plaintiff had an RFC for a reduced range of

light work.  Plaintiff has not shown that the ALJ erred by failing to fully account for her alleged impairments and resulting limitations in the physical RFC finding.

Second, plaintiff argues the ALJ "failed to properly consider [plaintiff's] extreme morbid obesity."  (Doc. 12 at PAGEID 3940).  Plaintiff contends while the ALJ acknowledged plaintiff's weight and body mass index ("BMI"), the ALJ "vaguely concluded without elaboration or any analysis that the 'limitations described in the residual functional capacity [] includes consideration of the claimant's obesity.'"  (*Id*., citing Tr. 20-21).  With no citation to the medical evidence of record, plaintiff argues that "certainly[,] the excessive weight put significant strain in exacerbating [plaintiff's] knee and lower extremities pain and, thus, her ability to stand and walk for a sustained period of time as required by light exertion work."  (*Id*.).

A claimant's severe impairment of obesity is evaluated under Social Security Ruling 19-2p.[9]  "SSR [19-2p] provides guidance on how we establish that a person has a medically determinable impairment (MDI) of obesity and how we evaluate obesity in disability claims under Titles II and XVI of the Social Security Act (Act)."  Soc. Sec. Ruling 19-2p, 2019 WL

[9] On May 20, 2019, the Social Security Administration rescinded and replaced Social Security Ruling 02-1p with Social Security Ruling 19-2p.  SSR 19-2p, 2019 WL 2374244 (May 20, 2019).  Social Security Ruling 19-2p provides that the Social Security Administration "will use this SSR beginning on its applicable date.  We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date.  This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision."  (*Id*. at n. 14).  Accordingly, because the ALJ's decision here was issued on February 25, 2021, when Social Security Ruling 19-2p rule was in effect, this Court will determine whether the ALJ's decision is supported by substantial evidence using Social Security Ruling 19-2p.

2374244, at *1. In considering obesity in assessing a claimant's RFC, Social Security Ruling 19-2p provides that an ALJ "must consider the limiting effects of obesity when assessing a person's RFC." *Id*. at *4, citing, in pertinent part, 20 C.F.R. § 404.1545. Social Security Ruling 19-2p states as follows:

> A person may have limitations in any of the exertional functions, which are sitting, standing, walking, lifting, carrying, pushing, and pulling. A person may have limitations in the nonexertional functions of climbing, balancing, stooping, kneeling, crouching, and crawling. Obesity increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities. Obesity may also affect a person's ability to manipulate objects, if there is adipose (fatty) tissue in the hands and fingers, or the ability to tolerate extreme heat, humidity, or hazards.

> We assess the RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment. People with an MDI of obesity may have limitations in the ability to sustain a function over time. In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity. This may be particularly true in cases involving obesity and sleep apnea.

> The combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately. For example, someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone. We consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments.

*Id*.

The ALJ appropriately considered plaintiff's obesity in applying the sequential evaluation process. The ALJ found obesity to be a severe impairment at step two of the sequential evaluation process. (Tr. 13). The ALJ further found that plaintiff's obesity did not meet or

20

medically equal an applicable listing at step three of the sequential evaluation process. (Tr. 14, citing Soc. Sec. Ruling 19-2p). Then, the ALJ thoroughly examined the medical evidence of record, including evidence related to plaintiff's obesity, and concluded that the "limitations described in the residual functional capacity [] include consideration of the claimant's obesity." (Tr. 20-21). For example, the ALJ discussed that in June and July 2016, treatment notes reflected that plaintiff had "waddling gait due to her obesity with an increased swing to the left compared to the right." (Tr. 18, citing Tr. 3346). The ALJ noted that plaintiff's BMI was 56.29 in August 2016, and treatment records from October 2016 reflected that plaintiff did not have a limp and exhibited no decreased range of motion. (Tr. 19, citing Tr. 3331). The ALJ cited treatment records from June 2017 showing plaintiff's BMI was 60.76. (*Id*., citing Tr. 3154). In December 2017, the ALJ explained that although plaintiff "continued to have lower back pain," her "examination at that time noted normal gait and intact motor function in all extremities." (Tr. 20, citing Tr. 3337-38). The ALJ found that in April 2018, "the claimant's record indicated no back pain associated with walking [and] [s]he had no arthralgia nor any difficulty walking." (Tr. 20, citing Tr. 3415). In June 2018, plaintiff's gait and stance were normal. (*Id*., citing Tr. 3412). The ALJ also considered treatment records from Dr. Pandey which showed an intact gait, limited active range of motion in the spine, and 5/5 motor strength in the bilateral lower extremities. (*Id*., citing Tr. 3603, 3605-06). Finally, state agency physician Dr. Hahn specifically considered plaintiff's obesity in assessing plaintiff's RFC (Tr. 116), and the ALJ relied on and largely adopted Dr. Hahn's findings. An ALJ does not commit reversible error by

relying on the opinion of a doctor who has considered a claimant's obesity and factored this impairment into his findings.  *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) (noting that an ALJ need not make specific mention of obesity if he credits an expert's report that considers obesity); *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004) (stating that "although the ALJ did not explicitly consider [claimant's] obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.")).

Moreover, as the Commissioner correctly notes (Doc. 14 at PAGEID 3955-56), plaintiff identifies no functional limitations or restrictions resulting from her obesity that were not accounted for in the ALJ's RFC.  Plaintiff has cited no medical evidence in the record the ALJ allegedly disregarded or which casts doubt on the ALJ's RFC finding on plaintiff's obesity.  Nor has plaintiff shown that the evidence of plaintiff's obesity required the inclusion of greater limitations than those found by the ALJ.  Accordingly, the ALJ properly considered plaintiff's obesity in formulating the RFC, and this finding is supported by substantial evidence.

Finally, plaintiff argues the ALJ's RFC is not supported by substantial evidence because after the Appeals Council remand, the ALJ "inexplicitly removed" a restriction in the RFC: "limited to smooth level surfaces, so, no slippery surfaces, no erratically moving surfaces, and no uneven terrain," with no accompanying "explanation or logical bridge for removing it."  (Doc. 12 at PAGEID 3941, citing Tr. 16-17, 131).  Plaintiff's argument, in its entirety, states that

22

plaintiff "declined in mobility since that prior hearing where ALJ Tindale issued that reasonable and well-supported restriction. This makes no sense, and the ALJ failed to provide any explanation or logical bridge for removing it." (*Id.*) (emphasis in original).

"It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). *See also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument). Plaintiff failed to develop this argument legally or factually, provide any analysis, or cite any specific treatment notes in the medical evidence of record or reasons as to why plaintiff believes the ALJ committed error. For example, plaintiff alleges she declined in mobility, but plaintiff failed to point to specific treatment notes or medical records in support of this statement. Therefore, any such argument is waived. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) (internal citations omitted) (emphasis added) (The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, *as well as arguments adverted to in only a perfunctory manner*, are waived").

Accordingly, the Court finds the ALJ's RFC is supported by substantial evidence of record, and plaintiff's second assignment of error is overruled.

Based on the above, plaintiff's statement of errors (Doc. 12) is **OVERRULED. IT IS THEREFORE ORDERED THAT** the decision of the Commissioner is **AFFIRMED**,

judgment be entered in favor of the Commissioner, and this case is **CLOSED** on the Court's docket.

Date: 5/12/2023

Karen L. Litkovitz
Chief United States Magistrate Judge

24